Deductions:

| | |
|---|---:|
| Ordinary and necessary expenses | $33, 343. 56 |
| Compensation of members | 16, 300. 00 |
| Interest | 555. 73 |
| Taxes | 108. 56 |
| Debts ascertained to be worthless | 1, 438. 12 |
| Exhaustion | 588. 62 |
| | $52, 334. 59 |
| Net income | 9, 502. 23 |

The income of taxpayer was due primarily to the activities of its stockholders. Capital was a material income-producing factor.

DECISION.

The determination of the Commissioner is approved.

---

APPEAL OF HOUSEAL-SIMONS AGENCY, INC.

Docket No. 3418. Submitted June 24, 1925. Decided January 16, 1926.

*Oscar W. Underwood, Jr., Esq.*, for the taxpayer.
*J. Arthur Adams, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and LOVE.

This appeal is from the determination of a deficiency in income taxes of $897.22 for the year 1919, and $46.88 for 1920.

The taxpayer assigned seven errors, all of which are involved in and may be epitomized into the one assignment—that the Commissioner erred in refusing personal service classification to the taxpayer for the years in question.

FINDINGS OF FACT.

The taxpayer corporation is the successor, through several changes of names, to Bailey-Jones Real Estate & Insurance Co., with an authorized capital stock of $15,000, with 150 shares of stock.

In 1918, W. H. Oldham purchased from the stockholders all the stock of the Bailey-Jones Real Estate & Insurance Co., at $70 per share, with the understanding and agreement that F. L. Kendrick, H. B. Thompson, and W. B. Houseal would take all of said stock off his hands at $80 per share and pay him therefor out of the profits of the business.

In pursuance of that agreement and as of January 1, 1919, he sold and assigned said stock as follows:

| | Shares. |
|---|---:|
| To Kendrick | 45 |
| To Thompson | 18¾ |
| To Houseal | 56¼ |

He kept for himself 30 shares, and agreed to assign same to Houseal as soon as Houseal could pay for them. Each of the shareholders drew the dividends, if any, on his shares of stock and exercised all the rights of stockholders.

The business of the taxpayer was fire insurance, real estate rentals and sales on a commission basis.

The corporation, at the time Oldham purchased the stock, as well as at the time of its transfer by him to his purchasers, had no tangible assets—nothing except licenses from insurance companies to represent them in that locality; current insurance policies subject to renewal at termination, at will of policyholders; and rental contracts, on which the taxpayer acquired the right to collect rents, retain its commissions, and remit the net to the landlord. All these rights, or practically all of them, were subject to cancellation at any time. They were kept alive, if at all, by the efforts of Kendrick, Thompson, and Houseal in pushing and going after the business. These persons devoted their entire time to the business of the corporation.

When an insurance policy was sold, the premium, if paid in cash, was credited to cash, and the net amount due the insurance company was charged to accounts payable, and remittance thereof was made within 60 days. Premiums not paid in cash were credited to accounts receivable and the net charged to accounts payable. The same policy was pursued with reference to rent accounts and commissions on sales of land, except that commissions on sales of land were usually paid in cash, and no entry to accounts payable was due or made.

The taxpayer had no physical assets other than a small amount of office furniture, and never borrowed any money. The gross income from commissions, per annum, amounted approximately to $50,000.

On December 31, 1919, the condition of the business was as follows:

Assets:
```
    Cash in bank and on hand_____ $6,485.06
    Bills receivable (money due us on note)_____    235.00
    Accounts receivable (being mostly insurance accounts)_____ 11,273.70
    Furniture and fixtures and automobile_____   1,982.33
                                                                 _____
                                                                  19,976.09
Liabilities:
    Amount due insurance companies by us_____ $7,760.17
    Accounts payable (amount due landlords for rent, etc.)_  6,368.71
                                                             _____ 14,128.88
                                                                        _____
                                                                          5,847.21
```

On December 31, 1920, the condition of the business was as follows:

Assets:

| | | |
|---|---|---|
| Cash in bank and on hand | | $3,626 82 |
| Furniture and fixtures and automobile | | 1,501.03 |
| ·Accounts receivable (being mostly insurance accounts) | | 14,154.34 |
| | | 19,282.19 |

Liabilities:

| | | |
|---|---|---|
| Amount due insurance companies by us | $6,020.93 | |
| Accounts payable (being mostly amount due us to landlords for rent collected) | 10,792.46 | |
| | | 16,813.39 |
| | | 2,468.80 |

Oldham, who retained 30 shares of the stock, was regularly employed by, and acted as general manager of, the United Steel Corporation. He was able, through his influence, to throw, and did throw, profitable business to the taxpayer. He was the only stockholder who had had much experience in business and the only one who had proven himself a successful business man.

In addition to throwing insurance and other business which he controlled to the taxpayer, he met in consultation with Kendrick, Thompson, and Houseal, or some of them, as often as once or twice a week, and counseled them in regard to plans of procedure and work to obtain new business.

### DECISION.

The determination of the Commissioner is approved.

On reference to the Board, STERNHAGEN, LANSDON, and LOVE dissent.

---

## APPEAL OF EMILY N. VANDERPOEL TRUST, DICKINSON W. RICHARDS, TRUSTEE.

Docket No. 2046. Submitted May 9, 1925. Decided January 19, 1926.

*Joseph W. Zeller, Esq.,* for the taxpayer.
*Lee I. Park, Esq.,* for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income tax in the amount of $2,023.19 for the calendar year 1920, arising from the deduction by the Commissioner from the March 1, 1913, value of a certain building of depreciation to the date of sale in May, 1920, for the purpose of determining the gain or loss upon the sale.